## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **TYLER FINNEGAN,**<br><br>    *Plaintiff,*<br><br>  v.<br><br>**MASSACHUSETTS COLLEGE OF PHARMACY AND HEALTH SCIENCES, by and through the Board of Trustees,**<br><br>    *Defendant.* | Civ. No. _____<br><br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Tyler Finnegan ("Plaintiff" or "Mr. Finnegan"), by and through his counsel, The Law Office of Keith Altman, PLLC, and Nesenoff & Miltenberg, LLP, alleges upon knowledge with respect to himself, and upon knowledge information and belief, as to all other matters, as follows:

## THE NATURE OF THIS ACTION

1.     This case arises from Plaintiff's wrongful dismissal from the Pharmaceutical graduate program at Defendant Massachusetts College of Pharmacy and Health Sciences in Boston (governed by and through their Board of Trustees) ("MCPHS" or "Defendant").

2.     Plaintiff, a promising student at MCPHS, had his hopes of becoming a Doctor of Pharmacy ripped away from him due to the discriminatory actions and inactions of the administration.

3.     Plaintiff is seeking damages for Defendant's violation of the Americans with Disabilities Act ("ADA"), Section 504 of the Rehabilitation Act, unfair trade practice under Mass. Gen. Laws Ch. 93(A), breach of contract, and denial of basic fairness.

1

## THE PARTIES

4.      Plaintiff Tyler Finnegan is a resident of the Commonwealth Massachusetts and a former student of Massachusetts College of Pharmacy and Health Sciences, School of Pharmacy in Boston program.

5.      Defendant Massachusetts College of Pharmacy and Health Sciences, by and through their Board of Trustees, is a private university located in Boston, Massachusetts. MCPHS receives federal funds and is governed through its Board of Trustees. MCPHS has received federal funding at all times relevant to this litigation.

## JURISDICTION AND VENUE

6.      This action arises under the law of the United States. Therefore, this Court has subject matter jurisdiction under 28 U.S.C. § 1331, which provides district courts with jurisdiction over civil actions arising under the United States Constitution or laws of the United States.

7.      In accordance with 28 U.S.C. § 1367, this Court also has supplemental jurisdiction over Plaintiff's state law claims.

8.      This Court has personal jurisdiction over Defendant MCPHS on the grounds that it conducts business within the Commonwealth of Massachusetts.

9.      At all relevant times, the actions and events discussed herein transpired within the Commonwealth of Massachusetts.

10.      Venue for this action properly lies in this district because Defendant MCPHS is considered to reside in this judicial district.

## FACTUAL ALLEGATIONS COMMON TO ALL CLAIMS

**I.**   **Mr. Finnegan Obtained Admission to, and Enrolled in, MCPHS' Prestigious Doctor of Pharmacy Program.**

11.     In the Spring of 2016, Mr. Finnegan earned his bachelor's degree in medical biology from the University of New England, a regionally accredited university.

12.     Prior to graduation, Mr. Finnegan applied to attend the MCPHS School of Pharmacy program at Defendant's Boston campus.

13.     MCPHS accepted Mr. Finnegan in the Spring of 2016 as a candidate for a Doctor of Pharmacy—a six-year program.

14.     Upon his acceptance into the pharmacy program, MCPHS agreed to accept Mr. Finnegan's transfer course grades and credits.

15.     Mr. Finnegan matriculated MCPHS and commenced his coursework classes in the Fall of 2016.

**II.**   **The Relevant Policies and Procedures at MCPHS.**

16.     Upon Mr. Finnegan's acceptance to MCPHS, they provided him with a copy of the MCPHS Student Handbook (the "Handbook").[1]

17.     Pursuant to the Handbook, students may attempt a course "no more than two times." *Handbook*, 47.

18.     Regarding withdrawal from a specific course, the Handbook states that "[s]tudents may withdraw from a course through the end of the 10th week of the fall or spring semester." *Id.,* 66.

---

[1] The 2021-2022 MCPHS Student Handbook is unavailable for public viewing. The provisions incorporated into this complaint are taken from the 2022-2023 MCPHS Student Handbook. Upon information and belief, the relevant policies and provisions have not substantially changed between the two years.

19.     "After the official add/drop period, students who choose to withdraw receive a grade of W for the course." *Id.,* 66.

20.     Students can seek a leave of absence by meeting with their Academic Dean (*id.*, 58), and if they would like to seek a health or medical leave of absence by providing documentation from their medical provider. *Id.*, 63.

21.     Additionally, the Handbook states that MCPHS is required to comply with the the ADA and will provide accommodations upon a determination by the school itself. *Handbook,* 2. The Handbook even states that "[MCPHS] does not discriminate in…treatment, or access to its programs or activities" and notes active compliance with the ADA and the Rehabilitation Act of 1972. *Id.* at 2, 71.

22.     The Handbook also states that a student who is dismissed may be reinstated, even if they have been dismissed twice from the program. *Id.,* 66.

III.    <u>**MCPHS is Placed on Academic Probation.**</u>

23.     In the Summer of 2017, the "signature pharmacy degree program at MCPHS" was "placed on academic probation" by accreditors. Laura Krantz, *Boston pharmacy program put on probation*, BOSTON.COM (Jul. 28, 2017), https://www.boston.com/news/local-news/2017/07/28/boston-pharmacy-program-put-on-probation/.

24.     This probation occurred during Plaintiff's enrollment at MCPHS, following the 2016-2017 academic year.

25.     "The Boston pharmacy program fell short of four standards for accreditation." *Id.* However, "more specific information" regarding the shortcomings is not made public. *Id.*

26.     Plaintiff remained enrolled at MCPHS despite the probation status, as MCPHS assured that "all entering and current students who graduate will be eligible for board examinations and licensure" despite their status on probation. *Id.*

## IV.   MCPHS Changed Course and Refused to Include Plaintiff's Transferred Courses in the Calculation of his GPA.

27.     While Plaintiff attended MCPHS, he worked as a Certified Pharmacy Technician at Wegman's to gain hands on experience and training in his chosen field.

28.     By the Fall of 2018, Plaintiff had completed two years of MCPHS's six-year program for a degree as a Doctor of Pharmacy.

29.     At that point in time, Plaintiff had already accumulated $78,145 in student loan debt and incurred $42,867 in out-of-pocket expenses.

30.     During that semester, Plaintiff had a post advisory session meeting with MCPHS employee, Associate Dean of Student Engagement & Success Steven Crosby ("Crosby" or "Dean Crosby") to discuss which future courses and electives he should take to succeed academically and achieve his goals.

31.     At that time, MCPHS told Plaintiff for the very first time, that although his prior elective courses did transfer for credit, he was placed at a disadvantage because the grades themselves did not transfer for the purposes of being calculated into his GPA.

32.     As a result of the grades not being calculated into his GPA, Plaintiff's GPA was lower than that of his classmates, possibly hindering future career opportunities and a higher salary.

33.     Therefore, Plaintiff chose to add additional electives to his schedule, and even retake ones he had already completed outside of MCPHS and passed, in hopes of raising his GPA.

34.     Upon information and belief, MCPHS accepted transfer credits for another student enrolled in Plaintiff's same program and applied the grades to the other student's GPA.

## V.     MCPHS Agrees to Change Plaintiff's Grade for Organic Chemistry II.

35.     The following spring, in 2019, Mr. Finnegan met with Associate Dean of Pharmacy Experiential Education Paul DiFrancesco ("DiFrancesco" or "Dean DiFrancesco") and Dean Crosby again to discuss additional issues and grades.

36.     Specifically, Dean DiFrancesco requested that Mr. Finnegan's Organic Chemistry II grade be updated from the D that he received that semester to the A- that he previously earned in the exact same course while attending Salem State University.

37.     Dean DiFrancesco subsequently granted approval of the Organic Chemistry II grade update.

38.     Dean DiFrancesco, with Dean Crosby present, advised Plaintiff to submit a formal request to Crosby requesting that the Organic Chemistry II grade be updated. Plaintiff subsequently submitted his request in-person to Crosby.

39.     However, when MCPHS released grades at the end of the semester, the grade for Organic Chemistry II had not been updated and, as of April 2022, no changes had been made to the grade.

## VI.     Plaintiff Continued His Studies Despite Being Diagnosed with a Permanent Medical Condition After Experiencing a Medical Event.

40.     Shortly thereafter, while Plaintiff worked, he experienced a temporary loss of vision and "saw stars."

41.     He was subsequently hospitalized and diagnosed with chronic migraines. As a result of the diagnosis, Plaintiff was unable to look at blue or fluorescent lighting for more than one hour at a time.

42.     Prior to the commencement of courses in the Fall of 2019, Plaintiff communicated his recent diagnosis with MCPHS employees and submitted all the necessary paperwork. MCPHS advised Plaintiff that he would be able to re-take examinations at a later date; however, not a single employee referred Plaintiff to seek any additional accommodations accordingly.

43.     Plaintiff continued to suffer with migraines throughout the Fall of 2019 semester.

44.     As a result, his schoolwork and attendance suffered, impeding his ability to properly study and participate in virtual learning during the COVID-19 pandemic.

45.     Because of this, Plaintiff sought guidance from Dean Crosby to discuss the overwhelming course load and makeup work.

46.     Dean Crosby instructed Plaintiff to focus on improving his health condition, stated that Mr. Finnegan would not be penalized for his condition, and promised that he could progress to Spring semester and retake any missed classes in the Fall. Plaintiff did as instructed by Dean Crosby.

47.     Unfortunately, Plaintiff continued suffering from migraines resulting in treatment failure, despite the treatment that he received.

**VII.   Dean Crosby Promised Mr. Finnegan That He Would Handle the Specifics of Plaintiff's Medical Leave of Absence from His Studies After Specifically Advising <u>Plaintiff to Take Such a Leave.</u>**

48.     Mr. Finnegan met once again with Dean Crosby who advised Plaintiff to take the rest of the semester off from school entirely.

49.     Plaintiff followed Dean Crosby's advice to do so.

50.     Dean Crosby specifically stated to Plaintiff that he would handle the logistics with MCPHS and that he would "take care" of Plaintiff.

51.     Plaintiff subsequently began his leave of absence and no longer attended classes as of that time.

52.     Dean Crosby failed to report Plaintiff's leave of absence through the proper channels at MCPHS and as a result, Plaintiff received F's for his classes instead of the W's (withdrawals) he should have received based upon his leave of absence.

**VIII.    Plaintiff Finnegan Resumed His Studies at MCPHS, But in Reliance Upon the Promise and Advice of Dean Crosby, Withdrew from Courses Due to a Family Crisis and the Severity of His Own Medical Condition.**

53.     Unaware of the F's he received, Plaintiff enrolled to retake the Spring classes he withdrew from in the fall. Plaintiff did so on the advice and word of Dean Crosby who informed him to "move on" to Spring semester courses and that they would revisit his missed courses either in the summer or Fall terms.

54.     Plaintiff's migraines became more severe, and he continued to struggle in his classes.

55.     Midway through the fall 2020 semester, Plaintiff suffered a loss in his family and his mother was diagnosed with triple-negative breast cancer.

56.     Plaintiff provided a letter to MCPHS from his medical provider regarding his migraines to demonstrate his medical condition and need for aid. Plaintiff even handed a copy of this letter directly to Crosby.

57.     Plaintiff met with Crosby again who advised him not to continue his classes and withdraw from the semester so he could return home and assist his family and restore his health status.

58.     Dean Crosby stated that he would "take care of" Plaintiff.

59.     Plaintiff did as Crosby advised.

**IX.    Plaintiff Performed Well Academically After Resuming His Studies and Receiving <u>New Medical Treatment.</u>**

60.    Plaintiff resumed his studies with a full course load in the Spring of 2021.

61.    At that time, Plaintiff received new treatment for his migraines.

62.    Plaintiff improved his grades by at least 25% in each class and the new treatment he was undergoing for his migraines was highly effective.

**X.    Plaintiff Realized the Error That MCPHS Reflected on His Transcript When <u>MCPHS Erroneously Dismissed Plaintiff Entirely.</u>**

63.    Despite Plaintiff taking a Health/Medical Leave of Absence as instructed by Crosby, Plaintiff's transcript still reflected F's in the classes he withdrew from in the spring 2020 semester instead of W's.

64.    Pursuant to the MCPHS Handbook, withdrawal from a course resulted in a student's transcript bearing the marking of a "W"—noting a withdrawal as opposed to an earned letter grade. *Handbook,* 66.

65.    Plaintiff enrolled in courses in the Fall of 2021 and again, continued to make strides in his academic performance.

66.    MCPHS circulated an email in December of 2021, after Plaintiff had completed his final examinations, stating that any student who did not pass the Fall 2021 semester would be permitted to continue to the Spring 2022 semester due to the impact of Covid-19.

67.    Plaintiff accepted this email as a promise from MCPHS to continue enrollment.

68.    Contrary to their prior correspondence, during winter break, on or around December 16, 2021, MCPHS dismissed Plaintiff from school based upon alleged poor academic performance.

69.     However, this was based on inaccurate information because Plaintiff's grades still reflected F's on his transcript from the Spring 2020 semester instead of the W's that Dean Crosby stated would be possible for Plaintiff.

70.     Additionally, Dean Crosby failed to communicate and provide appropriate accommodations for Plaintiff's test taking. He informed Plaintiff that he would be permitted extra time on additional days; however, instead Dean Crosby did not appropriately communicate this with Plaintiff's professors, leading to confusion and lack of grades for Plaintiff at the time the decision was dispensed.

71.     In the dismissal letter, MCPHS referred to Plaintiff's migraines as a "personal struggle," noting "chronic medical conditions" and "chronic migraines" were not the same as "personal struggles."

72.     Plaintiff was not given any warning or any opportunity to defend himself or provide any explanation prior to his dismissal.

73.     Dean Crosby later stated that the December 16, 2021 email "did not apply" to Plaintiff.

74.     On April 12, 2022, Plaintiff met with the MCPHS, via Zoom, to further discuss several topics, including why his transcript still displayed F's—which were inaccurate—and had not been changed to reflect his withdrawal from those courses.

75.     The Defendants advised Plaintiff that he could appeal *only* the grades, because the dismissal from MCPHS was "final." It was in this meeting that Plaintiff first learned that the decision to dismiss him would be final.

76.     Plaintiff filed an appeal after the meeting that day.

77.     In his appeal, Plaintiff shared correspondence with Dean Crosby after his conversation in 2019, where he provided the grade from Organic Chemistry II that he completed at a different institution.

78.     Defendant failed to act on Plaintiff's appeal. To date, Plaintiff has yet to receive a decision from MCPHS on his appeal.

79.     To date, Plaintiff has received no further correspondence from Defendant.

80.     Defendant removed Mr. Finnegan's access to his MCPHS email account and systems, depriving him of critical access to information.

81.     To date, Plaintiff's grades have not been rectified by Defendant.

## XI.    **Plaintiff Has Sustained Substantial Damages.**

82.     Plaintiff has suffered and will continue to suffer significant damages as a result of MCPHS' erroneous dismissal.

83.     As a result of Defendant's actions and inactions, Plaintiff is unable to pursue his continued education to earn his Doctorate of Pharmacy degree—a dream he long held and worked so hard to achieve.

84.     Due to this wrongful decision, Mr. Finnegan's transcript and educational records will be permanently marred with a notation of dismissal.

85.     In addition to the damages Mr. Finnegan will suffer as a result of the permanent notation on his academic record, and the disclosure to all potential transfer schools, employers, and licensing boards, Plaintiff will also suffer immense irreparable harm with respect to his reputation that he has worked so hard to build.

86.     Plaintiff has also suffered mental anguish and emotional distress because of Defendant's actions and inactions which resulted in his erroneous dismissal.

87.     Finally, due to the wrongful dismissal, Plaintiff has lost out on earning potential income, which already has and will continue to have a detrimental impact on his future earning capacity.

**XII.    Respondeat Superior and Agency.**

88.     Under Federal and Massachusetts law, an employer may be vicariously liable for an employee's actions when they are acting within the scope of their employment on behalf of the employer.

89.     At all times relevant to this action, all named individuals were employed by MCPHS. Their acts and omissions relevant to this litigation were undertaken within the scope of their employment with MCPHS.

90.     At the time of this Complaint, only the named individuals themselves are aware of the exact role that each individual played in the events that are the subject of the lawsuit.

91.     Therefore, MCPHS is liable for the actions of their employees.

**CAUSES OF ACTION**

**COUNT I**
**VIOLATION OF SECTION 504 OF THE REHABILITATION ACT**

92.     Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

93.      As set forth in Section 504 of the Rehabilitation Act, "no otherwise qualified individual with a disability…shall, solely by reason of his disability, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving federal assistance." 29 U.S.C. § 794(a); 29 U.S.C. § 794 *et. seq.*

94.     Plaintiff suffers from a disability as that term is defined under Section 504 of the Rehabilitation Act, in that he has chronic migraines.

95.     Plaintiff is a disabled individual and has been diagnosed with chronic migraines. Chronic migraines are a mental impairment that substantially limits his major life activities of learning, reading, studying, and attending classes.

96.     However, he is in no way unable to complete the course work of MCPHS.

97.     As set forth above, Defendant MCPHS engaged in disability discrimination by dismissing Plaintiff for alleged poor academic performance because of his disability—specifically, due to his chronic migraines, as he withdrew from classes *to avoid* poor academic performance.

98.     Dean Crosby suggested Plaintiff withdraw to avoid the same consequence yet failed to file the proper paperwork reflecting Plaintiff's withdrawal from classes and subsequent leave of absence. By not filing the proper paperwork noting Plaintiff's leave of absence and withdrawal from classes, MCPHS' actions and inactions resulted in Plaintiff's ultimate dismissal from MCPHS.

99.     MCPHS also failed to provide further referral for accommodations for Plaintiff despite being fully aware of his condition.

100.    At the time of his dismissal, Plaintiff had completed four years of the six-year program and incurred more than $199,000 in student debt and paid nearly $43,000 out of pocket.

101.    Plaintiff was dismissed from MCPHS because of his disability, in violation of Section 504 of the Rehabilitation Act and, but for his disclosure of that disability, and ultimate dismissal that followed, he would have graduated from MCPHS and would be working as a licensed pharmacist today.

102.     He has been treated by MCPHS in a malicious manner and denied the formality of a hearing, any opportunity to defend himself, or meaningful consideration of his filed appeal.

103.    Plaintiff is now paying interest on his total debt of over $199,000 because he no longer is a student.

104.    He has lost the income that he would have received as a pharmacist at the rate of approximately $144,000 a year had he been allowed to continue in the program and graduate as anticipated in May of 2022.

105.    As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

106.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

**COUNT II**
**VIOLATION OF THE ADA**

107.    Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

108.    The ADA extends its protections to private schools through Title III, prohibits discrimination "on the basis of disability" in "any place of public accommodation." 42 U.S.C. § 12182(a); 42 U.S.C. §§ 12181 *et. seq.*

109.    The Handbook, provided by MCPHS, provides that they will comply with the ADA.

110.    MCPHS operates an "undergraduate, or postgraduate private school, or other place of education," which is a place of public accommodation pursuant to 42 U.S.C. § 12181(7)(J).

111.    Plaintiff suffers from a disability as that term as defined by the ADA, in that he has chronic migraines.

112.    Plaintiff is a disabled individual and has been diagnosed with chronic migraines. Chronic migraines are a mental impairment that substantially limits his major life activities of learning, reading, studying, and attending classes.

113.    However, he is in no way unable to complete the course work of MCPHS.

114.    As set forth above, Defendant MCPHS engaged in disability discrimination by dismissing Plaintiff for alleged poor academic performance because of his disability—specifically, due to his chronic migraines, as he withdrew from classes *to avoid* poor academic performance.

115.    Dean Crosby suggested Plaintiff withdraw to avoid the same consequence yet failed to file the proper paperwork reflecting Plaintiff's withdrawal from classes and subsequent leave of absence. By not filing the proper paperwork noting Plaintiff's leave of absence and withdrawal from classes, MCPHS' actions and inactions resulted in Plaintiff's ultimate dismissal from MCPHS.

116.    MCPHS also failed to provide further referral for accommodations for Plaintiff despite being fully aware of his condition.

117.    At the time of his dismissal, Plaintiff had completed four years of the six-year program and incurred more than $199,000 in student debt and paid nearly $43,000 out of pocket.

118.    Plaintiff was dismissed from MCPHS because of his disability, in violation of the ADA, and but for his disclosure of that disability, and ultimate dismissal that followed, he would have graduated from MCPHS and would be working as a licensed pharmacist today.

119.    He has been treated by MCPHS in a malicious manner and denied the formality of a hearing, any opportunity to defend himself, or meaningful consideration of his appeal.

120.    Plaintiff is now paying interest on his total debt of over $199,000 because he no longer is a student.

121.    He has lost the income that he would have received as a pharmacist at the rate of approximately $144,000 a year had he been allowed to continue in the program and graduate as anticipated in May of 2022.

122.    As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

123.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

**COUNT III**
**VIOLATION OF MASS. GEN. LAWS CH § 93 (A)**

124.    Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

125.    Mass. Gen. Laws Ch § 93 (A) provides that "[u]nfair methods of competition and unfair or deceptive acts or practice in the conduct of any trade or commerce are… unlawful."

126.    There must be a causal connection between the seller's deceptive act and the buyer's injury or loss. Mass. Gen. Laws Ch § 93 (A).

127.    Chapter § 93 (A) defines specific debt collection practices considered to be unfair or deceptive, including: knowingly false representation of the character, extent or amount of the debt and withholding property as collateral on a debt when there is no legal right to do so.

128.    In accordance with Mass. Gen. Laws. Ch 93 (A), Plaintiff put MCPHS on notice of the claims to be brought against them with a demand letter.

129.    MCPHS sought payments from Plaintiff for classes it knew, or should have known, Plaintiff had already completed.

130.     MCPHS also sought payments from Plaintiff for classes it knew, or should have known, Plaintiff had properly withdrawn from.

131.     As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

132.     As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## COUNT IV
## BREACH OF CONTRACT

133.     Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

134.     It is well established in Massachusetts that the relationship between a student and college or university is contractual in nature, with the circulars, bulletins, catalogues, and regulations as the materials that comprise the contract. *See Doe v. Trustees of Boston Coll.,* 892 F. 3d 67, 80 (1st Cir. 2018); *Doe v. W. New England Univ.,* 228 F. Supp. 3d 154, 169 (D. Mass. 2017) (internal citations omitted); *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 593 (D. Mass. 2016).

135.     Similarly, courts around the country have routinely recognized this same contractual relationship. *See Doe. v. Quinnipiac Univ.*, 404 F. Supp.3d 643, 666-67 (D. Conn. July 10, 2019); *Johnson v. Schmitz*, 119 F.Supp.2d 90, 96-97 (D. Conn. 2000); *Papelino v. Albany Coll. of Pharmacy of Union Univ.,* 633 F. 3d 81, 93-94 (2nd Cir. 2011); *Doe v. Univ. of Sciences*, 961 F. 3d 203, 211-213 (3rd Cir. 2020); *Onawola v. Johns Hopkins Univ.*, 412 F. Supp. 2d 529, 532 (D. Md. 2006), aff'd, 221 F. App'x 211 (4th Cir. 2007) (internal citations omitted); *Univ. of Mississippi Med. Ctr. v. Hughes,* 765 So. 2d 528, 534 (Miss. 2000); *Doe 1 v. Baylor Univ.,* 240 F. Supp. 3d 646, 668 (W.D. Tex. 2017); *Atria v. Vanderbilt Univ.*, 142 Fed. Appx. 246, 255 (6th Cir.

2005); *Ross v. Creighton Univ.,* 957 F. 2d 410, 416 (7th Cir. 1992); *Corso v. Creighton Univ.*, 731 F. 2d 529, 531-533 (8th Cir. 1984); *Kashmiri v. Regents of Univ. of California,* 156 Cal. App. 4th 809, 823, 67 Cal. Rptr. 3d 635, 646 (2007), *as modified* (Nov. 15, 2007), *as modified* (Nov. 28, 2007); *Sirpal v. Univ. of Miami*, 509 Fed. Appx. 924, 929 (11th Cir. 2013); *Doe v. George Washington Univ.*, 321 F. Supp. 3d 118, 123 (D.D.C. 2018); *see also Chenari v. George Washington Univ.*, 847 F.3d 740, 744 (D.C. Cir. 2017).

136.    At all relevant times hereto, a contractual relationship existed between Plaintiff Finnegan and Defendant MCPHS.

137.    Plaintiff applied to and enrolled at MCPHS and paid associated fees and expenses. Plaintiff did so in reliance on,  and with the reasonable expectation that MCPHS would implement and enforce the provisions and policies set forth in its official publications, including the Handbook.

138.    As a result, an express, or alternatively, a contract implied in law or in fact was formed between Plaintiff and the Defendant.

139.    The contracts contained the implied covenants of good faith and fair dealing. The contracts also implicitly guaranteed that any actions and/or process would be conducted with basic fairness.

140.    Based on the aforementioned facts, Defendant committed several breaches of its agreements with Plaintiff that resulted in his dismissal from MCPHS. A non-exhaustive list of Defendant's breaches includes the following:

141.    The Handbook states that "[s]tudents may withdraw from a course through the end of the 10th week of the fall or spring semester" and that "[a]fter the official add/drop period, students who choose to withdraw receive a grade of W for the course." *Handbook,* 66.

18

142.    Plaintiff informed MCPHS of his medical issues in timely fashion. He notified MCPHS of his withdrawal and fulfilled his obligation, accordingly.

143.    Defendant breached their contract when they failed to withdraw Plaintiff from the courses as promised, resulting in F's on his transcript instead of the W's permitted by the Handbook.

144.    Defendant further breached their contract when they charged Plaintiff for courses in which he had withdrawn.

145.    The Handbook promises compliance with the ADA and that it will provide accommodations, accordingly. *Handbook,* 2. The Handbook further states that "[MCPHS] does not discriminate in…treatment, or access to its programs or activities" and notes active compliance with the ADA and the Rehabilitation Act. *Id.* at 2, 71.

146.    Defendant breached their contract with Plaintiff by failing to uphold their promises to Plaintiff with accommodations for examinations due to his medical condition. Plaintiff provided documentation and met with the relevant Dean, who promised to "take care" of Plaintiff.

147.    Defendant also breached their contract with Plaintiff by failing to refer Plaintiff for further accommodations, despite their knowledge of his medical condition.

148.    Defendant further breached their contract with Plaintiff by dismissing due to his medical condition, under the guise of alleged poor academic performance.

149.    In addition to the Handbook, Defendant circulated an email in December of 2021 promising that any student who did not pass the Fall 2021 semester would be permitted to continue to the Spring 2022 semester due to the impact of Covid-19.

150.    This email, a circular, constituted a contract under Massachusetts law, that Defendant was bound to comply with.

151.    Defendant breached their contract with Plaintiff by failing to allow him to continue his education as an enrolled student in the Spring 2022 semester despite their promise.

152.    As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

153.    As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

**COUNT V**
**DENIAL OF BASIC FAIRNESS**

154.    Plaintiff incorporates by reference the facts alleged in each and every allegation set forth in the preceding paragraphs of this Complaint as if fully set forth herein.

155.    "A covenant of good faith and fair dealing is implied in every contract and a university has an obligation to adhere to this covenant when dealing with its students." *Doe v. Harvard Univ.,* 462 F. Supp. 3d 51, 66 (D. Mass. 2020) (citing *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 87 (1st Cir. 2018)).

156.    Massachusetts courts have held as part of the implied covenant of good faith and fair dealing that school disciplinary hearings must be "conducted with basic fairness." *Cloud v. Trs. of Bos. Univ.,* 720 F.2d 721, 725 (1st Cir. 1983) (citing *Coveney v. President & Trs. of Holy Cross Coll.,* 445 N.E.2d 136, 139 (Mass. 1983)); *Schaer v. Brandeis Univ.,* 735 N.E.2d 373, 380 (Mass. 2000); *Doe v. Harvard Univ.*, 462 F. Supp. 3d at 66.

157.    Additionally, a private university may not act "arbitrarily or capriciously" in disciplining a student. *Doe v. Brandeis Univ.,* 177 F. Supp. 3d 561, 600 (D. Mass. 2016).

158.    As demonstrated above, (see Count IV, ¶¶ 133-153) Plaintiff and Defendant engaged in a contractual relationship.

159.    Defendant had a duty, either an express or implied contract, as a matter of common law, to ensure that MCPHS conducted the process to dismiss Plaintiff in good faith with basic fairness.

160.    In addition to the breaches of contract outlined above (see Count IV, ¶¶ 133-153), which are expressly incorporated herein, Defendant failed to provide Plaintiff with basic fairness which resulted in Plaintiff's improper dismissal from MCPHS.

161.    Defendant failed deliver on their promise to provide Plaintiff GPA grade credit for Organic Chemistry II, despite their prior promise to do so. Upon information and belief, Defendant permitted this to occur for another student enrolled in Plaintiff's same program.

162.    Defendant unfairly failed to amend Plaintiff's grades from F's to W's in accordance with the policies outlined in their Handbook.

163.    Defendant also failed to provide proper accommodations for Plaintiff despite their knowledge of his medical condition. Despite his promise, Dean Crosby failed to provide the proper documentation and placed Plaintiff in an unfair position.

164.    Defendant further failed to allow Plaintiff to remain enrolled as a student in the Spring 2022 semester, in direct contradiction to their December 2021 email that expressly stated that students would be permitted to do so regardless of academic performance.

165.    As a consequence of the above failures, MCPHS wrongly dismissed Plaintiff for alleged poor academic performance. However, it was clear that had Defendant delivered on their promises and further given Plaintiff accommodations, he would have remained enrolled at MCPHS.

166.    Defendant further failed to provide Plaintiff with basic fairness by not affording him any opportunity to set forth his account and/or a response prior to his dismissal. If Plaintiff

had been given this opportunity, he would have highlighted the facts noted above, including, but not limited to: (a) Defendant's failure to provide GPA credit for his Organic Chemistry II grade, despite their prior promise; (b) Defendant's failure to amend his grades to W's instead of F's due to his withdrawal; (c) his marked progress in his academic performance; and (d) the failure to provide required accommodations.

167.   As a direct and foreseeable consequence of the above noted conduct, Plaintiff sustained damages, including, without limitation, loss of educational and career opportunities, economic injuries, emotional distress, and other direct and consequential damages.

168.   As a result of the foregoing, Plaintiff is entitled to damages in an amount to be determined at trial, plus prejudgment interest, attorneys' fees, expenses, costs, and disbursements.

## **PRAYER FOR RELIEF**

WHEREFORE, for the foregoing reasons, Plaintiff demands a judgment against Defendant as follows:

(i)      On the first cause of action for a violation of Section 504 of the Rehabilitation Act: a judgment against Defendant in favor of Plaintiff for actual damages for financial loss and punitive damages in an amount to be determined at trial, reinstatement of Plaintiff as a student at MCPHS in the next successive semester, an order restraining Defendant from any further violations of Section 504 of the Rehabilitation Act or other actions against Plaintiff due to his disability, an order requiring Defendant to make any reasonable accommodation that may be necessary with respect to such disability, an order requiring Defendant to refrain from further discriminatory acts in violation of federal law which would prevent him from graduation from MCPHS, amendment of Plaintiff's transcript to remove the notation of dismissal and to reflect the withdrawals,

as promised, to enjoin the Defendant from any further acts of discrimination in violation of Section 504 of the Rehabilitation Act, compensatory damages from MCPHS under Section 504 of the Rehabilitation Act (including, but not limited to, damages for the loss of income that Plaintiff would have had as a pharmacist, and other consequential and foreseeable damages), compensatory damages from MCPHS for the tuition fees incurred, and judgment against Defendant in favor of Plaintiff for all costs sustained in connection with this action, including attorneys' fees;

(ii)   On the second cause of action for a violation of the ADA: a judgment against Defendant in favor of Plaintiff for actual damages for financial loss and punitive damages in an amount to be determined at trial, reinstatement of Plaintiff as a student at MCPHS in the next successive semester, an order restraining Defendant from any further violations of the ADA or other actions against Plaintiff due to his disability, an order requiring Defendant to make any reasonable accommodation that may be necessary with respect to such disability, an order requiring Defendant to refrain from further discriminatory acts in violation of federal law which would prevent him from graduation from MCPHS, amendment of Plaintiff's transcript to remove the notation of dismissal and to reflect the withdrawals, as promised, to enjoin the Defendant from any further acts of discrimination in violation of the ADA, compensatory damages from MCPHS under the ADA (including, but not limited to, damages for the loss of income that Plaintiff would have had as a pharmacist, and other consequential and foreseeable damages), compensatory damages from MCPHS for the tuition fees incurred, and judgment against Defendant in favor of Plaintiff for all costs sustained in connection with this action, including attorneys' fees;

(iii)     On the third cause of action for a violation of Mass. Gen. Laws Ch. § 93 (A): judgment against Defendant and in favor of Plaintiff for actual damages for financial loss and punitive damages in an amount to be determined at trial and as are allowed under the statute, judgment against Defendant and in favor of Plaintiff for an injunction prohibiting Defendant's wrongful conduct, and judgment against Defendant and in favor of Plaintiff for all costs sustained in connection with this action, including attorneys' fees;

(iv)     On the fourth cause of action for breach of contract: judgment against Defendant and in favor of Plaintiff for damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest attorneys' fees, expenses, costs and disbursements;

(v)      On the fifth cause of action for denial of basic fairness: judgment against Defendant and in favor of Plaintiff for damages in an amount to be determined at trial, including, without limitation, damages to physical well-being, emotional and psychological damages, damages to reputation, past and future economic losses, loss of educational opportunities, loss of future career prospects, plus prejudgment interest attorneys' fees, expenses, costs and disbursements; and

(vi)     Grant any other and further relief as justice so requires and the Court finds just and proper.

## **JURY TRIAL DEMANDED**

Plaintiff hereby demands a trial by jury on all issues stated in this action.

**Date: December 6, 2023**
**Boston, Massachusetts**

Respectfully Submitted,

*Attorneys for Plaintiff Tyler Finnegan*

**THE LAW OFFICE OF KEITH ALTMAN, PLLC**

Keith Altman, Esq.
(*Pro Hac Vice* Forthcoming)
33228 West 12 Mile Road, Suite 375
Farmington Hills, Michigan 48334
(248) 987-8929
keithaltman@kaltmanlaw.com

**NESENOFF & MILTENBERG LLP**

/s/ *Andrew T. Miltenberg*
Andrew T. Miltenberg, Esq.
(*Pro Hac Vice* Forthcoming)
363 Seventh Avenue, Fifth Floor
New York, New York 10001
(212) 736-4500
amiltenberg@nmllplaw.com

/s/ *Regina M. Federico*
Tara J. Davis, Esq. (BBO No. 675346)
Regina M. Federico (BBO No. 700099)
101 Federal Street, 19th Floor
Boston, Massachusetts 02110
(617) 209-2188
tdavis@nmllplaw.com
rfederico@nmllplaw.com